### UNITED STATES  DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**CEDRICK ROBINSON**                    **CIVIL ACTION**

**versus**                    **NO. 12-1327**

**WARDEN LYNN COOPER**                    **SECTION: "R" (3)**

### REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Cedrick Robinson, is a state prisoner incarcerated at the Avoyelles Correctional Center, Cottonport, Louisiana.  On August 17, 2005, he was convicted under Louisiana law of distribution of cocaine within one thousand feet of a "drug free zone," i.e. a religious

building.[1]  On May 15, 2008, he pleaded guilty to being a second offender and was sentenced as

such to a term of thirty years imprisonment.[2]  On July 28, 2009, the Louisiana Fifth Circuit Court

of Appeal affirmed his conviction and sentence.[3]  The Louisiana Supreme Court then denied his

related writ application on April 5, 2010.[4]

On or about March 29, 2011, petitioner filed an application for post-conviction relief

with the state district court.[5]  That application was denied on April 21, 2011.[6]  His related writ

applications were likewise denied by the Louisiana Fifth Circuit Court of Appeal on June 29, 2011,[7]

and by the Louisiana Supreme Court on April 20, 2012.[8]

On May 17, 2012, petitioner filed the instant federal *habeas corpus* application.[9]  In

that original application, petitioner failed to specify his grounds for relief.  Instead, he simply stated:

---

[1] State Rec., Vol. V of VI, transcript of August 17, 2005, pp. 95-96; State Rec., Vol. I of VI, minute entry dated August 17, 2005; State Rec., Vol. I of VI, jury verdict form.

[2] State Rec., Vol. V of VI, transcript of May 15, 2008; State Rec., Vol. I of VI, minute entry dated May 15, 2008; State Rec., Vol. I of VI, guilty plea form.

[3] State v. Robinson, 19 So.3d 1206 (La. 2009) (No. 09-KA-104); State Rec., Vol. II of VI.

[4] State v. Robinson, 31 So.3d 355 (La. 2010) (No. 2009-KO-1950); State Rec., Vol. I of VI.

[5] State Rec., Vol. I of VI.

[6] State Rec., Vol. II of VI, Order dated April 21, 2011.

[7] Robinson v. Cooper, No. 11-KH-604 (La. App. 5th Cir. June 29, 2011); State Rec., Vol. II of VI.

[8] State *ex rel.* Robinson v. State, 85 So.3d 1260 (La. 2012) (No. 2011-KH-1686); State Rec., Vol. II of VI.

[9] Rec. Doc. 1.

"PLEASE SEE ATTACHMENT BRIEF."[10]   However, no brief was attached to the petition.

Accordingly, he was ordered to amend his petition by filing a memorandum specifying the grounds

on which he was seeking relief and stating the facts supporting each ground.[11]   He thereafter filed

his memorandum, asserting the following claims for relief:

1.      Petitioner's rights were violated when he was denied a fair
opportunity to retain private counsel;

2.      Petitioner received ineffective assistance of counsel due to a
conflict of interest; and

3.      There was insufficient evidence to support petitioner's
conviction.[12]

The state concedes that petitioner's federal application is timely and that he exhausted his remedies

in state court.[13]

## I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254.

Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of

fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal

---

[10] Rec. Doc. 1, p. 5.

[11] Rec. Doc. 13.

[12] Rec. Doc. 15.

[13] Rec. Doc. 20, p. 3.

habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the

> state court confronts a set of facts that are materially
> indistinguishable from a decision of the [United States] Supreme
> Court and nevertheless arrives at a result different from [United
> States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets,

and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court

has explained:

> [A] state-court decision can involve an "unreasonable application" of
> this Court's clearly established precedent in two ways.  First, a
> state-court decision involves an unreasonable application of this
> Court's precedent if the state court identifies the correct governing
> legal rule from this Court's cases but unreasonably applies it to the
> facts of the particular state prisoner's case.  Second, a state-court
> decision also involves an unreasonable application of this Court's
> precedent if the state court either unreasonably extends a legal
> principle from our precedent to a new context where it should not
> apply or unreasonably refuses to extend that principle to a new
> context where it should apply.

Williams v. Taylor, 529 U.S. 362, 407 (2000).  The Supreme Court has noted that the focus of this

inquiry "is on whether the state court's application of clearly established federal law is objectively

unreasonable, and we stressed in Williams that an unreasonable application is different from an

incorrect one."  Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011)

("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application

of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."),

cert. denied, 132 S.Ct. 1537 (2012).

While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court recently held:

[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.

If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

<u>Harrington v. Richter</u>, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

## II.  Facts

On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

of this case as follows:

The testimony and evidence in the record reveals the following:

On April 1, 2004, Agent Joshua Bell was working in an undercover capacity for Jefferson Parish Sheriff's Office Narcotics Division.  He was in an unmarked vehicle equipped with surveillance equipment, was given funds, and was instructed by Agent Lisa Thornton to go to the area of 36th and Estalote in Harvey to purchase narcotics.

Agent Bell went to the corner of 36th and Estalote, passed the convenience store, drove around the block, and then approached the store again.  He asked some black males if they knew where he could "get a twenty"[FN3] and they ignored him.  Then, defendant came on his bicycle, and Agent Bell asked him if he knew where he could "get a twenty" and defendant responded yes.  Agent Bell purchased narcotics from defendant.  He believed the off-white, rock-like

objects were consistent with crack cocaine.  These objects later tested positive for cocaine.

> [FN3]  Agent Bell explained that in this case this was slang for $20 of crack cocaine.

> Agent Bell gave the narcotics and the videotape of the transaction to Agent Lisa Thornton.[FN4]   About five days later, Sergeant Joe Williams viewed the tape and recognized that defendant was the seller.  Agent Thornton compiled a photographic lineup, and Agent Bell positively identified defendant.

> [FN4]  The videotape of the transaction was played for the jury.

> According to Agent Bell, the transaction was conducted about 25 to 30 feet from the store, and a "short block" from a church, a drug-free zone area.  Agent Thornton explained that around the corner from the transaction, at 36th and Pallet, there was a church. The church, Second Pleasant Grove Church, was approximately 506 feet from where the transaction took place.  Agent Thornton testified that the church is and was on April 1, 2004, a posted drug-free zone. Agent Thornton testified that the church was clearly closer than 1000 feet from the transaction.[14]

### III.  Petitioner's Claims

#### A.  Denial of a Fair Opportunity to Retain Private Counsel/Sufficiency of the Evidence

As noted, petitioner claims that he was denied a fair opportunity to retain private counsel and that there was insufficient evidence to support his conviction.  The state argues that both of these claims are procedurally barred in this federal proceeding.  The state is correct.

The United States Fifth Circuit Court of Appeals has held:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state

---

[14] State v. Robinson, 19 So.3d 1206, 1208 (La. 2009) (No. 09-KA-104); State Rec., Vol. II of VI.

–  7  –

court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.  To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims.  This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

In the last reasoned state court judgment concerning these two claims, the state district court found that the claims were procedurally defaulted pursuant to La. Code Crim. P. art. 930.4(B) and (C).[15]  The Louisiana Fifth Circuit Court of Appeal found "no error" in that ruling,[16] and the Louisiana Supreme Court denied relief without assigning additional reasons.[17]  It is well-established that La. Code Crim. P. art. 930.4(B) and (C) are independent and adequate state

---

[15] State Rec., Vol. II of VI, Order dated April 21, 2011.  Those provisions provide:

B. If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief.

C. If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief.

La. Code Crim. P. art. 930.4(B) and (C).

[16] Robinson v. Cooper, No. 11-KH-604 (La. App. 5th Cir. June 29, 2011); State Rec., Vol. II of VI.

[17] State ex rel. Robinson v. State, 85 So.3d 1260 (La. 2012) (No. 2011-KH-1686); State Rec., Vol. II of VI.  "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground."  Finley, 243 F.3d at 218.

court grounds sufficient to procedurally bar claims from federal *habeas* review.  See, e.g., Brown v. Cain, Civ. Action No. 11-2267, 2011 WL 7042222, at *8 (E.D. La. Dec. 20, 2011), adopted, 2012 WL 123288 (E.D. La. Jan. 17, 2012); Thomas v. Cain, Civ. Action No. 11-2408, 2011 WL 6046536, at *5 (E.D. La. Nov. 17, 2011), adopted, 2011 WL 6028779 (E.D. La. Dec. 5, 2011); Young v. Travis, Civ. Action No. 07-3542, 2011 WL 494811, at *8 (E.D. La. Jan. 13, 2011), adopted, 2011 WL 494802 (E.D. La. Feb. 4, 2011); Jones v. Cain, Civ. Action No. 10-0187, 2010 WL 3312592, at *5-6 (E.D. La. July 29, 2010), adopted, 2010 WL 3312594 (E.D. La. Aug. 19, 2010); Green v. Cooper, Civ. Action No. 06-1657, 2009 WL 87590, at *10 (E.D. La. Jan. 8, 2009).

When, as here, the state courts have rejected a petitioner's claims based on independent and adequate state procedural rules, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice."  Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, something that cannot fairly be attributed to him."  Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted).  Here, petitioner has made no attempt to establish cause for the failure to raise these claims in a timely manner.  "Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice."  Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Because petitioner has not met the "cause and prejudice" test, this Court need consider these claims only if the application of the procedural bar would result in a "fundamental

miscarriage of justice."   However, in order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."   Finley, 243 F.3d at 220 (citations omitted). Petitioner has made not made that showing; on the contrary, the evidence against him, including a videotape showing him committing the crime, is overwhelming.  Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

For these reasons, petitioner's claims that he was denied a fair opportunity to retain private counsel and that there was insufficient evidence to support his conviction are procedurally barred in this federal proceeding.

### B.  Ineffective Assistance of Counsel

Petitioner's next claim is that he received ineffective assistance of counsel.  The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 697 (1984).  Petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If the Court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong.  Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Petitioner's ineffective assistance of counsel claim was rejected on the merits by the state courts in the post-conviction proceedings.  The state district court held:

Petitioner argues that a potential conflict with appointed counsel caused ineffective assistance of counsel.  It is clear that the petitioner has a Sixth Amendment right to effective legal counsel. Under the well-known standard set out in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and State v. Washington, 491 So.2d 1337 (La. 1986), a conviction must be reversed if the defendant proves (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) counsel's inadequate performance prejudiced defendant to the extent that the trial was rendered unfair and the verdict suspect.  State v. Legrand, 2000-1462 (La. 12/3/03), 864 So.2d 89.

To be successful in arguing a claim of ineffective assistance of counsel, a post-conviction petitioner must prove deficient performance to the point that counsel is not functioning as counsel within the meaning of the Sixth Amendment.  A petitioner must also prove actual prejudice to the point that the results of the trial cannot be trusted.  It is absolutely essential that both prongs of the Strickland test must be established before relief will be granted by a reviewing court.

Furthermore, there is a strong presumption that counsel's performance is within the wide range of effective representation. Effective counsel, however, does not mean errorless counsel and the reviewing court does not judge counsel's performance with the distorting benefits of hindsight, but rather determines whether counsel was reasonably likely to render effective assistance.  State v. Soler, 93-1042 (La. App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.

The Supreme Court has emphatically directed that, "in evaluating the performance of counsel, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  Strickland, 466 U.S. at 690-691, 104 S.Ct. 2052, 80 L.Ed.2d 674.

Mindful of controlling federal and state jurisprudence, this court now turns to the specific claim of ineffective assistance made in the instant application and argued in petitioner's memorandum in support.

Petitioner claims that conflict with appointed counsel resulted in ineffective assistance of counsel.  Petitioner mainly points out how he did not agree with his appointed counsel.  However, no legal

conflict is presented, only animosity.  First, petitioner had eight months to retain counsel, and he failed to do so.  Second, petitioner does not present evidence to prove either prong of <u>Strickland</u>.  He does not present any evidence that, had he retained different counsel, the results of trial would have been different.  Petitioner's allegations are speculative and conclusory.  In sum, he has not established that his attorney's performance was in any way constitutionally deficient, or that he suffered prejudice as a result.[18]

The Louisiana Fifth Circuit Court of Appeal found "no error" in that ruling,[19] and the Louisiana Supreme Court denied relief without assigning additional reasons.[20]

Because an ineffective assistance of counsel claim is a mixed question of law and fact, this Court must defer to the state court decision unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); <u>Moore v. Cockrell</u>, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court has explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable.  This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of §

_____

[18] State Rec., Vol. II of VI, Order dated April 21, 2011.

[19] <u>Robinson v. Cooper</u>, No. 11-KH-604 (La. App. 5th Cir. June 29, 2011); State Rec., Vol. II of VI.

[20] <u>State *ex rel.* Robinson v. State,</u> 85 So.3d 1260 (La. 2012) (No. 2011-KH-1686); State Rec., Vol. II of VI.

2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."  Ibid.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."  Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S.Ct. 770, 785-86 (2011) (citation omitted).  The Supreme Court then

explained:

Surmounting Strickland's high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom.

Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  *The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The Strickland standard is a general one, so the range of reasonable applications is

– 14 –

> substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id</u>. at 788 (citations omitted; emphasis added).  For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted in the instant case with respect to petitioner's ineffective assistance of counsel claim.

As a preliminary matter, the Court notes that the crux of petitioner's claim is that his counsel labored under a "conflict of interest" which arose because counsel was aware that petitioner did not like him and wanted the services of another attorney.  However, even if there may have been a personality "conflict" between petitioner and his counsel, that is not the type of "conflict of interest" which is of moment under the Sixth Amendment.  Rather, as the United States Ninth Circuit Court of Appeals has explained:

> Obviously, the word "conflict" is also used in common parlance to describe a personality conflict, an artistic conflict, a family conflict, and many other sorts of antagonism – even war.  In this context, however, as the Supreme Court cases make clear, we are talking about *legal* conflicts of interest – *an incompatibility between the interests of two of a lawyer's clients, or between the lawyer's own private interest and those of the client*.  <u>See</u> Black's Law Dictionary 319 (8th ed. 2004).

<u>Plumlee v. Masto</u>, 512 F.3d 1204, 1210 (9th Cir. 2008) (emphasis added).  The fact that an accused dislikes his attorney, or *vice versa*, does not, without more, constitute a *legal* "conflict of interest."

<u>See</u> <u>Hale v. Gibson</u>, 227 F.3d 1298, 1313 (10th Cir. 2000) ("The fact that [defense counsel] did not like [his client] or did not trust him does not rise to the level of a conflict of interest.  Personality

– 15 –

conflicts are not conflicts of interest."). Simply put, there is no Sixth Amendment guarantee to "a 'meaningful relationship' between an accused and his counsel." Morris v. Slappy, 461 U.S. 1, 14 (1983).

Nevertheless, the fact that animosity between a petitioner and his counsel does not constitute a legal "conflict of interest" simply means that the ineffective assistance claim is not evaluated under the standard for conflicts of interest articulated by the Supreme Court in Cuyler v. Sullivan, 446 U.S. 335, 349-50 (1980), and Holloway v. Arkansas, 435 U.S. 475 (1978), where prejudice is presumed. Hale, 227 F.3d at 1313 n.4. It does not preclude a petitioner from showing that animosity resulted in ineffective assistance of counsel under the Strickland standard, which requires proof of both deficient performance and prejudice. However, for the following reasons, it is clear that petitioner has not made the required showings under Strickland.

In the instant case, defense counsel was in an unenviable position. Petitioner was charged with distribution of cocaine within one thousand feet of a church, and *he was caught on videotape committing that crime.* There was no real question as to the identity of the perpetrator, chemical analysis proved that the substance distributed was cocaine, and the fact that the drug distribution took place within a properly identified "drug free zone," i.e. a religious building, was easily provable. Although petitioner faults his counsel for not offering a better theory of defense, it is not apparent to the Court what defense other than entrapment could have been raised by counsel, and petitioner certainly identifies no other defense. Simply because counsel was unable to fashion a different, nonexistent defense out of whole cloth does not mean that he was ineffective. See, e.g., Amos v. Cain, Civ. Action No. 04-2029, 2008 WL 782472, at *9 (E.D. La. Mar. 20, 2008).

The only conceivably available defense, i.e. entrapment, was in fact raised. Regarding that defense, Louisiana courts have explained:

> Entrapment occurs when a state agent, to obtain evidence of the commission of an offense, solicits, encourages or otherwise induces another person to engage in conduct constituting the offense when that person is not otherwise predisposed to commit such an offense.  The entrapment defense comprises two elements:  (1) an inducement by a state agent to commit an offense, and (2) lack of predisposition to commit the offense on the part of the defendant.  Entrapment is an affirmative defense which must be raised by the defendant and supported by a preponderance of the evidence.
> Once the defendant meets this burden, the state has the burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the crime prior to government involvement.

State v. Henderson, 58 So.3d 552, 558-59 (La. App. 2nd Cir. 2011) (citations omitted), writ denied, 74 So.3d 216 (La. 2011).

Petitioner complains, however, that his counsel could not decide whether he was in fact going to raise an entrapment defense and, as result, was ill-prepared to prove that defense.  That is not accurate.  Counsel was obviously coy about whether he was going to argue entrapment; in fact, he expressly and repeatedly refused to state whether he was going to make such an argument.[21] But that coyness was not a sign of indecision; rather, counsel was clearly trying to lure the state into resting its case without presenting evidence that petitioner was "predisposed" to commit the crime.  That tactic, although canny, was ultimately unsuccessful, because both the court and the state were wise to the strategy, and, as a result, the state was allowed to present its evidence on that issue.

---

[21] See, e.g., State Rec., Vol. IV of VI, transcript of August 16, 2005, pp. 408-10; State Rec., Vol. V of VI, transcript of August 16, 2005, pp. 419-28; State Rec., Vol. V of VI, transcript of August 17, 2005, pp. 10-17.

However, counsel cannot be considered ineffective simply because his strategy failed.  Gray v. Lucas, 677 F.2d 1086, 1094 (5th Cir. 1982) ("[T]he fact that a particular strategy may prove to be unsuccessful does not by itself establish ineffective assistance.").

Petitioner also essentially argues that counsel should have done more in this case. That argument fails to realize that when, as here, counsel is faced with the task of defending an obviously guilty client, options are limited.  While petitioner suggests numerous actions he believes that counsel should have taken, those suggestions have no merit for the following reasons.

For example, petitioner complains that his counsel filed no pretrial motions. However, petitioner identifies no meritorious motions that went unfiled, and counsel obviously is not ineffective for failing to file meritless motions.  See, e.g., Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984) ("Counsel is not required to engage in the filing of futile motions.  The filing of pretrial motions falls squarely within the ambit of trial strategy."); Lindsey v. Travis, Civ. Action No. 06-7852, 2007 WL 1237919, at *8 (E.D. La. Apr. 25, 2007) ("[P]etitioner has made no showing whatsoever that any meritorious pretrial motions were abandoned or left unfiled. ...  He simply has not shown that counsel's failure to pursue pretrial motions constituted deficient performance in any way, much less that prejudice resulted.").

Petitioner also complains that counsel presented no evidence; however, he identifies no additional beneficial evidence which was actually available, and counsel cannot be ineffective for failing to procure and introduce nonexistent evidence.  Scruggs v. Warden, Lake Erie Correctional Institution, No. 1:07cv659, 2008 WL 5450607, at *3 (S.D. Ohio Dec. 31, 2008) ("A trial attorney cannot be ineffective for failure to discover evidence which does not exist."); Smith

v. Cockrell, No. 3-02-CV-1985-P, 2003 WL 21649942, at *3 (N.D. Tex. Jan. 29, 2003) (counsel not ineffective for failing to obtain copies of police video tapes and radio logs of petitioner's arrest where there was no evidence in the record that these pieces of evidence ever actually existed).

Petitioner next complains that counsel did not meet with him adequately prior to trial, but he fails to show that any demonstrable benefit would have accrued to the defense from additional meetings.   Therefore, he has not proven that any prejudice resulted, and his claim necessarily fails. See, e.g., Schwertz v. Cain, Civ. Action Nos. 12-1897 and 12-2142, 2012 WL 5956308, at *13 (E.D. La. Nov. 13, 2012), adopted, 2012 WL 5949516 (E.D. La. Nov. 28, 2012); see Murray, 736 F.2d at 282 ("[B]revity of consultation time between a defendant and his counsel, alone, cannot support a claim of ineffective assistance of counsel."); see also United States v. Elliott, No. 95-30901,  1996 WL 556816, at *1 (5th Cir. Sept. 9, 1996); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *8 (E.D. La. Dec. 11, 2008).

Petitioner also complains that counsel should have mentioned entrapment during his opening statement; however, as previously explained, it is clear that counsel was trying to mislead the state into believing that the defense would not be raised.   As such, counsel's action was a strategic choice. See, e.g., Murray, 736 F.2d at 283 ("The decision of whether to present an opening statement falls with the zone of trial strategy."); see also Gilliard v. Scroggy, 847 F.2d 1141, 1147 (5th Cir. 1988).  Federal *habeas* courts are not to lightly second-guess counsel's decisions on matters of trial tactics; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  Strickland, 466 U.S. at 689.  That presumption is clearly appropriate here.

Petitioner next complains that counsel did not put him on the stand to tell his side of the story. However, trial counsel, not a federal court reviewing a cold record, is in a better position to judge a defendant's abilities and to balance the benefits and risks of his testimony in light of those abilities. Further, a defendant's testimony *always* carries risks. For example, he may not testify as anticipated or his demeanor or character may impress the jury unfavorably and taint the jury's perceptions of him or prompt jurors to draw unfavorable inferences. Therefore, a decision as to whether to put a defendant on the stand "is a 'judgment call' which should not easily be condemned with the benefit of hindsight." United States v. Garcia, 762 F.2d 1222, 1226 (5th Cir. 1985); see also United States v. Mullins, 315 F.3d 449, 453 (5th Cir. 2002); Amos v. Cain, Civ. Action No. 04-2029, 2008 WL 782472, at *11 (E.D. La. Mar. 20, 2008); Curtis v. Cain, Civ. Action No. 06-1676, 2008 WL 482849, at *10 (E.D. La. Feb. 13, 2008). Because such a matter is inherently one of trial strategy, it is entitled to a presumption of reasonableness. See, e.g., Bower v. Quarterman, 497 F.3d 459, 473 (5th Cir. 2007) ("This court has repeatedly held there is a strong presumption that counsel's decision not to place a defendant on the stand was sound trial strategy." (quotation marks and brackets omitted)). Again, there is no basis for rejecting that presumption in this case.

Petitioner further complains that counsel should have challenged the chemical analysis of the drugs rather than stipulating to the laboratory report. That complaint is clearly frivolous. Where a stipulation is a concession of facts which the state could have easily established at trial and no advantage would have inured to a petitioner had counsel refused to enter the stipulation, counsel is not ineffective when he enters into such a stipulation. See Berry v. King, 765 F.2d 451, 454-55 (5th Cir. 1985); McGee v. Cain, Civ. Action No. 06-11360, 2007 WL 4591227,

at *12 (E.D. La. Dec. 26, 2007); <u>Parker v. 24th Judicial District Court</u>, Civ. Action No. 06-10551, 2007 WL 2893852, at *6 (E.D. La. Sept. 27, 2007).

Petitioner next complains that counsel should have objected  to the identification made by Agent Bell.  Specifically, petitioner alleges that the identification procedure used was unduly suggestive because Bell testified that he viewed the videotape of the crime "when [he] did the photographic lineup."[22]  <u>See</u> <u>United States v. Guidry</u>, 406 F.3d 314, 319 (5th Cir. 2005) ("The Due Process Clause protects against the use of evidence obtained from impermissibly suggestive identification procedures.").  As an initial matter, the Court notes that it is not clear from that passing comment whether Bell viewed the reviewed the videotape *prior to* making the identification from the photographic line-up.  However, even if he did, the fact that his recollection was refreshed by viewing the videotape did not render the identification procedure unduly suggestive.  <u>See</u> <u>United States v. Monks</u>, 774 F.2d 945, 957 (9th Cir. 1985); <u>United States v. Stubblefield</u>, 621 F.2d 980, 983 (9th Cir. 1980); <u>United States v. Ervin</u>, 436 F.2d 1331, 1333-34 (5th Cir. 1971); <u>United States v. Brown</u>, Crim. Action 08-87, 2008 WL 4724307, at *3 (E.D. La. Oct. 24, 2008).  Therefore, any objection to the identification procedure would have been meritless, and counsel is not ineffective for failing to make meritless objections.  <u>Clark v. Collins</u>, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); <u>see also</u> <u>United States v. Kimler</u>, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless

---

[22] State Rec., Vol. IV of V, trial transcript, p. 358.

argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").[23]

Put simply, petitioner faults his counsel for not doing more to prove that the charge here was unfounded.  However, petitioner bears the burden to prove that something else could have been done and that, if it had been done, there is a "reasonable probability" that the result of the proceeding would have been different.  He has utterly failed to make such a showing in this case.

In summary, it is evident that the state court identified the proper standard, i.e. the Strickland standard, and applied it in a reasonable manner.  Therefore, petitioner has failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.  Accordingly, applying the AEDPA's doubly deferential standard of review for such claims, this Court should likewise reject petitioner's ineffective assistance of counsel claim.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition of **Cedrick Robinson** for federal *habeas corpus* relief be **DISMISSED WITH PREJUDICE**.

---

[23] In his reply to the state's response in this proceeding, petitioner appears to argue that counsel also should have challenged the videotape of the drug transaction as being illegal under the state laws against the interception of wire, electronic, and oral communications. Rec. Doc. 21, pp. 4-5. However, the provisions of state law cited by petitioner do not apply in this case.  See La.Rev.Stat.Ann. § 15:1303(C); State v. Dyers, 567 So.2d 157, 158-59 (La. App. 4th Cir. 1990). Therefore, if he is claiming that counsel should have challenged the videotape under those provisions, that claim should also be rejected because any such challenge would likewise have been meritless.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[24]

New Orleans, Louisiana, this fifth day of February, 2013.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**

---

[24] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.